**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

CURTIS PAPERS, INC. F/K/A
ROYAL BLUE PAPERS, INC.                        Chapter 11
                                               Case No. 03-46139 (KCF)
     Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - -X
CURTIS PAPERS, INC. F/K/A
ROYAL BLUE PAPERS, INC.

     Plaintiff,

        vs.                                Adversary No. 06-2462

MILFORD BOROUGH                                Hearing Dates: 1/30/08, 1/31/08,
                                               2/4/08, 2/5/08, 2/6/08
     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES**

Kristin Richner, Esquire
Nicholas Brannick, Esquire
SQUIRE, SANDERS & DEMPSEY
41 South High Street
Columbus, Ohio 43235
Attorneys for Plaintiff, Curtis Papers, Inc. f/k/a Royal Blue Papers, Inc.

Martin Allen, Esquire
James Harding, Esquire
DIFRANCESCO, BATEMAN, COLEY, YOSPIN,
KUNZMAN, DAVIS & LEHRER, P.C.
15 Mountain Boulevard
Warren, New Jersey 07059
Attorneys for Defendant, Milford Borough

On August 10, 2006, Curtis Papers, Inc., f/k/a Royal Blue Papers, Inc. ("Curtis" or "Debtor") filed a Complaint For Determination of Tax Liability Pursuant to 11 U.S.C. § 505. The Debtor presented its case in chief by declaration, and Milford Borough conducted its cross-examination on February 6, 2008. The parties submitted written summations on April 21, 2008, and the Court reserved decision. The following represents the Court's findings of fact and conclusions of law.

Factual Background

On November 4, 2003, five creditors of Curtis filed an involuntary Chapter 7 petition for relief in the Bankruptcy Court for the District of New Jersey. On the same date, Curtis executed a Deed of Assignment for the Benefit of Creditors in the Probate Court for Hamilton County, Ohio. In light of the Assignment for the Benefit of Creditors, the petitioning creditors, with the consent of the Debtor and interested parties, sought to suspend the bankruptcy proceeding pursuant to 11 U.S.C. § 305(a). The Bankruptcy Court (Judge Lyons presiding) entered an order to that effect on December 17, 2003. During the course of the assignment proceeding, many of the Debtor's assets were liquidated. On February 8, 2006, Judge Lyons entered a stipulated order vacating the suspension order, entering an Order of Relief in the Bankruptcy Court, and converting the case from an involuntary Chapter 7 to a voluntary Chapter 11. Thereafter, Judge Lyons recused, and on August 14, 2006 the Chapter 11 case was transferred to Judge Ferguson. Judge Ferguson entered an order confirming the Debtor's Second Modified Plan of Liquidation on February 26, 2007.

The property at issue, commonly known as 404 Frenchtown Road, Milford Borough[1],

---

[1] Alexandria Township was also a defendant in the Complaint but on November 8, 2007, the Debtor filed a Notice of Settlement with Alexandria Township that resolved all outstanding tax issues. As a result, Count II can be dismissed.

consists of two parcels. The first parcel, designated as Lot 13, Block 5.01 on Milford Borough's official tax maps, contains approximately 12.84 acres. The second parcel, designated as Lot 51, Block 19 on Milford Borough's official tax maps, contains approximately 56.54 acres. *See,* Brannick Declaration Re: Certified Public Documents - Ex. B and D. The second parcel included the Milford Mill, which consisted of a paper mill and office space (approx. 794,535 square feet [approx. 50,000 of which was office space]), and a coatings plant (approx. 43,453 square feet). *See*, Blau Appraisal at 37. The Milford Mill was originally built in 1907. Substantially all of the buildings in the paper mill portion were built before 1958 and most before 1940. *See,* Blau Apprisal at 37. The Milford Mill produced no paper pulp and the boiler was operated by natural gas. Due to ongoing operational losses, in April 2003 the Debtor's Board of Directors voted to cease all operations and the Milford Mill officially closed in June 2003. *See*, McKinnish Dec. at ¶ 28.

The Plaintiff commenced this adversary proceeding on August 10, 2006 challenging the assessments for tax years 2002 through 2006. The assessed value ("AV") of the property for the tax years in dispute was:

| Parcel | 2002 AV | 2003 AV | 2004 AV | 2005 AV | 2006 AV |
| --- | --- | --- | --- | --- | --- |
| Block 13 Lot 5.01 | $133,400 | $163,400 | $163,400 | $163,400 | $163,400 |
| Block 19 Lot 51 | $12,598,500 | $12,732,300 | $7,500,000 | $7,500,000 | $7,500,000 |
| Total | $12,731,900 | $12,895,700 | $7,663,400 | $7,663,400 | $7,663,400 |

The Milford Borough Tax Assessor conducted a district-wide reassessment in the Borough for the 2003 and 2004 tax years.

Legal Analysis

The Bankruptcy Code authorizes bankruptcy courts to "determine the amount or legality of any tax ...." 11 U.S.C. § 505(a)(1). There are exceptions to a bankruptcy court's power to make tax determinations, but, the parties have not argued that any of those exceptions apply in this case. *See generally*, 11 U.S.C. § 505(a)(2)[2]. In applying § 505, the court must look to the substantive law of the state in which the property is located. In re Custom Distribution Services, Inc., 216 B.R. 136 (Bankr. D.N.J. 1997), *aff'd in part, rev'd in part on other grounds*, 224 F.3d 235 (3d Cir. 2000). Accordingly, New Jersey law will control the determination here.

Under New Jersey law, a municipal tax assessment is entitled to a presumption of correctness. Schimpf v. Little Egg Harbor Tp., 14 N.J.Tax 338 (1994); Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34 (App. Div. 1982). The threshold determination in this case is whether the Debtor has overcome that presumption. If not, that is the end of the inquiry and this Court must accept the original assessment. Id.

The taxpayer has the burden of proof on the correctness of the tax assessment. In re Custom Distribution Services Inc., 224 F.3d 235, 246 (3d Cir. 2000)(citing Aetna Life Ins. Co. v. Newark, 10 N.J. 99 (1952)). A taxpayer can rebut the presumption by providing evidence that is "sufficiently 'definite, positive and certain in quality and quantity' to prove a valuation different from the municipality's assessment." Schimpf, 14 N.J. Tax at 343. It has been noted that "[i]n the context of tax assessment cases, the substantial evidence standard merely requires that petitioner demonstrate

---

[2] Additional exceptions to § 505(a)(2) were added by BAPCPA but those are inapplicable here because this case was filed prior to the effective date of October 17, 2005.

4

the existence of a valid and credible dispute regarding valuation. The ultimate strength, credibility or persuasiveness of petitioner's arguments are not germane during this threshold inquiry." MSGW Real Estate Fund, LLC v. Mountain Lakes Borough, 18 N.J. Tax 364 (1998)(*quoting* FMC Corp. v. Unmack, 92 N.Y.2d 179, 699 N.E.2d 893 (1998)).

The Debtor presented a retrospective appraisal by Charles E. Blau, Esq. that was dated June 28, 2007 ("Blau Appraisal"). A retrospective appraisal incorporates a valuation date that is prior to the date of the report. That was necessary in this case because the relevant valuation dates are October 1, 2001 through October 1, 2005. Mr. Blau was retained by the Debtor in January 2007 for the purposes of this adversary proceeding, and his retention was approved by the Bankruptcy Court in March 2007.

Charles Blau is a certified general real estate appraiser licensed in New Jersey. His educational background includes a Bachelor of Arts degree from Emory University in 1978 and a Juris Doctor degree from Washington College of Law at American University in 1981 as well as extensive continuing education classes. [Plaintiff's Ex. 8-B] Mr. Blau served as a Certified Tax Assessor for the State of New Jersey from 1991 through 2005. He was named "Appraiser of the Year" for 2003 and 2004 by the National Association of Independent Fee Appraisers. He has been qualified as an expert witness in numerous previous cases in the federal and state courts. Mr. Blau has wide-ranging appraisal experience and, germane to this case, he has experience appraising industrial properties, contaminated properties, and wetlands. Milford's counsel conducted a thorough cross-examination of Mr. Blau that lasted more than 7 hours, and examined the underpinnings of all aspects of his report.

In determining market value, an appraiser must first develop an opinion as to the highest and best use of the property. A determination of the highest and best use of the property requires consideration of what is legally permissible, physically possible, financially feasible, and maximally productive for the property. *See*, Schimpf at 343-44; General Motors Corp. v. Linden City, 22 N.J. Tax 95 (2005). The highest and best use determination must be made prior to determining which appraisal approach to use. The three appraisal approaches are: the cost approach, the sales comparison approach, and the income capitalization approach. The Blau Appraisal concluded that the highest and best use of the property was as vacant land. To that end, the Blau Appraisal opined that the existing buildings should be demolished and the land held until market conditions and zoning changes would make it feasible to redevelop the site. Viewing the property as vacant land, the Blau Appraisal then determined that the sales comparison approach was the most appropriate for valuation. The Blau Appraisal ultimately concluded that the property, as zoned, had zero market value as of the relevant dates.

The Court is faced with an enormous disparity between Milford's tax assessments and the Blau Appraisal. For tax years 2002 and 2003 the disparity is nearly $13M and for tax years 2004 - 2006 it is nearly $8M. Such a vast disparity raises red flags. A town's tax assessment, while entitled to a initial presumption of correctness, is not sacrosanct. *See, e.g.,* Schimpf (finding that the "municipality ha[d] misconstrued the law involving the 'presumption of correctness' in local property tax appeals.") When sufficient credible evidence is presented to call an assessment into question, it can and should be disregarded and the true value of the property determined by the court. Ford Motor Co. v. Edison Twp., 127 N.J. 290 (1992); Pantasote Co. v. Passaic, 100 N.J. 408 (1985).

As the New Jersey Supreme Court explained: "the 'so-called' presumption ha[s] no artificial probative force once substantial evidence to the contrary has been asserted." Ford Motor at 312.

Here, the Debtor has met its burden of overcoming the Borough's presumption. The Court at this point need not conclude that the Blau Appraisal is the most credible evidence of valuation, only that it demonstrates a valid and credible dispute regarding valuation exists. The Blau Appraisal certainly meets that modest threshold. Accordingly, the Court must consider the totality of the evidence presented without reliance on any presumption. The next step is for the Court to examine the evidence that has been presented and to come to a fair conclusion as to value. *See*, In re Mocco, 222 B.R. 440, 446 (Bankr. D.N.J. 1998).

Several issues cause this Court to question the validity of the Milford tax assessments. The first is that Milford's tax assessor acknowledged that he is inexperienced in assessing industrial property. On the dates at issue, Milford's tax assessor was David M. Gill. At his deposition, Mr. Gill indicated that it was part of his job to defend legal challenges to the assessed value of residential property. *Gill Dep.* at 29 [Pl. Ex. 1-A] When asked if defense of challenges to industrial assessment were part of his job description, Mr. Gill candidly responded: "I will not do it. I do not have enough qualifications and knowledge of the subject of industrial properties." *Gill Dep.* at 54-55 [P-1-A] Despite that lack of expertise, Mr. Gill was the person charged with valuing the property for tax purposes. New Jersey law requires that annually a municipal tax assessor must "after examination and inquiry, determine the full and fair value of each parcel of real property situated in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments."

N.J.S.A. § 54:4-23.

Another problem that calls into question the validity of the tax assessments is that, at least for the years 2002 and 2003, the tax assessments were stale. In re Appeal of City of East Orange, 103 N.J. Super. 109 (App. Div. 1968)(The law calls for the separate assessment of each parcel annually at its true value on the assessing date). Mr. Gill testified that the assessments for those years had simply been rolled over from year to year based on an assessment that was done in 1987 (the year of the Town's last revaluation prior to 2004). *Gill Dep.* at 31. Although such "roll overs" are an economic reality in most towns, that does not mean that such actions comply with the statutory mandate of N.J.S.A. § 54:4-23. In commenting on this practice, the New Jersey Supreme Court noted that "the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor's function." Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 413-14 (1975). Mr. Gill also admitted that he did not review the basis for the 1987 assessment, so he had no independent knowledge whether the figure that was being "rolled over" was ever accurate. *Gill Dep.* at 33-34. Based on that, the Court cannot give much credence to the 2002 and 2003 assessments.

The basis for the 2004-2006 assessed values is also questionable. Mr. Gill testified that he did not go to the property and inspect it for the revaluation. Mr. Gill lowered the value of Block 19, Lot 51 from $12.7M to $7.5M based solely on the fact that he had read in a local paper that there was a contract for sale at that price. *Gill Dep.* at 56. The short-comings of using that as the sole basis for valuing the property is demonstrated by the fact that the sale was never consummated. The proposed sale also included the part of the property that was located in Alexandria Township

(approximately 40 acres), but no adjustment was made for the value attributable to that portion. Perhaps more troubling are Mr. Gill's responses to the following questions at his deposition:

> Q: Do you have an opinion as to what the true value for Block 19, Lot 51 was for 2004, if it wasn't 7 and a half?
> A: No, no opinion.
> Q: The prior years assessment for 2003 after the first reassessment was 12, approximately 12.7 million dollars. Is that correct?
> A: Yes.
> Q: Could the assessment for '04 have been 12.7 million dollars?
> A: Could have been.

*Gill Dep.* at 65. Such equivocation is unacceptable when a tax assessor's statutory mandate is "after examination and inquiry" to use "his judgment" to ascertain "the full and fair value of each parcel of real property situated in the taxing district ...." N.J.S.A. § 54:4-23.

Milford Borough decided to withdraw its expert report, therefore, the primary evidence of value before the Court is the Blau Appraisal. In its summation, Milford Borough raises several objections to the Blau Appraisal. One is that the entire report should be disregarded as a net opinion because, among other perceived failures, Mr. Blau failed to inspect the interiors of the buildings and did not measure the improvements. Mr. Blau testified on cross-examination that he did not enter the buildings to take measurements because their state of disrepair made it dangerous to do so. More importantly, a precise measurement of the interior of the buildings was unnecessary since his ultimate conclusion was that the improvements should be demolished. This is distinguishable from BASF Corp. Coatings and Ink Division v. Belvidere Town, 23 N.J. Tax 551 (2007) in which the court found an assessor's valuation unreliable because he did not personally inspect the facility, review any construction drawings for the facility, or even review photographs of the facility. The expert in that case reviewed only a site plan and layout drawings, but no construction drawings. By

contrast, Mr. Blau personally inspected the premises on at least two occasions and included numerous photographs of the premises in his report. On the whole, the Court does not regard the Blau Appraisal as an inadmissible net opinion[3]. To the extent their were shortcomings in the Appraisal, most were fully explained and/or amplified during the lengthy cross-examination of Mr. Blau.

An objection that does have some validity is that Mr. Blau failed to consider the equipment that was on the premises as of the valuation dates under the New Jersey Business Retention Act. N.J.S.A. § 54:4-1. Milford argues that "Plaintiff's expert's opinion should be give [sic] little if any weight" as a result of this failure. *Milford Borough Summation* at 10. That is overstating the case. At best, the omission might call into question whether a zero value for the property is entirely accurate, but it is not enough to call into question the validity of the entire appraisal.

Both sides agree that in determining the highest and best use of the property an appraiser must consider what is legally permissible, physically possible, financially feasible, and maximally productive for the property. *See*, Schimpf at 343-44; General Motors Corp. v. Linden City, 22 N.J. Tax 95 (2005). Milford argues that the Blau Appraisal was flawed because by concluding that the property should be held for future residential development it failed to properly consider what is legally permissible. Milford maintains that because residential uses were not legally permitted or even contemplated until 2005[4], it is impossible to conclude that the highest and best use of the

---

[3] A "net opinion" is one that is merely "an expert's bare conclusions, unsupported by factual evidence." Buckelew v. Grossbard, 87 N.J. 512 (1981).

[4] On January 18, 2005, the Borough of Milford adopted a Redevelopment Overlay Plan pursuant to the New Jersey Local Redevelopment and Housing Act, N.J.S.A. 40A:12-1, that expands the permissible uses of the property to include some residential development. Therefore, the Redevelopment Overlay Plan was in place as of October 1, 2005 and could be relevant to the 2006 tax assessment.

10

property for the years 2002-2005 could be residential. That argument misapprehends the basic conclusion underlying the Blau Appraisal. The primary reason the Blau Appraisal concludes that the property has zero value is precisely because the property was zoned industrial for the tax years at issue. Thus, the statement that "no potential purchaser would ever buy this property without approvals because of the huge liability and risk that a financially feasible use will be allowed." *Blau Appraisal* at 80. Prior to concluding that residential use (assuming the needed zoning change) was the highest and best use, the Blau Appraisal did consider other possible uses but rejected them for a variety of reasons. For example, an alternative industrial use was rejected because Hunterdon County has a low demand for industrial space and the property is poorly located within the County for such use. *Blau Appraisal* at 78. The potential use of the property for warehouse storage was rejected because of low demand coupled with the environmental problems. Id. The potential conversion of the property for office or retail use was also rejected because there is little demand for such space in that area. Id. Mr. Blau amplified the reasons these alternative uses were rejected during his cross-examination. During cross-examination, Milford's counsel pressed Mr. Blau on why he had not considered every possible alternative use for the property, including such far-flung options as turning the mill into a paper museum. While the Court found Mr. Blau's testimony on that issue to be thorough and credible, it does not think that every conceivable option must have been expressly considered for Mr. Blau's appraisal to be valid. The New Jersey Supreme Court has recognized that "[u]nderlying the subtle rule that remote uses are irrelevant (internal citations omitted) is the more basic principle that property valuation should have some relation to reality ..."

11

Hackensack Water Co. v. Old Tappan Borough, 77 N.J. 208, 214 (1978). The idea that a decaying industrial site in a rural part of New Jersey could be economically viable as a museum, for example, is simply not realistic.

Another perceived flaw that Milford notes is that the Blau Appraisal relies on the prospective feasibility analysis report prepared by Jeffrey Donohoe Associates in 2007 ("Donohoe Report"). The Donohoe Report was prepared to advise the Borough regarding its redevelopment plan and as a result addresses matters that post-date the valuation dates. As a general rule, "[s]ubsequent events should not be used as the direct evidence of value." Borough of Ft. Lee v. Invesco Holding Corp., 3 N.J. Tax 332, 340 (1981). The Invesco court went on to note that "[w]hile the use of subsequent events as direct evidence of value is not appropriate, a valuation predicated upon subsequent events may, in an appropriate situation, be utilized to corroborate an opinion independently arrived at and based on facts known or reasonably ascertainable as of the critical date. *See* In re Erie R. R. System, 19 N.J. 110, 115 A.2d 89 (1955); Stanford Enterprises v. East Orange, 1 N.J. Tax 317, 322 (Tax Ct.1980)." Invesco at 342. The Court finds that the facts from the Donohoe Report that Mr. Blau relied upon in reaching his conclusions were "reasonably ascertainable as of the critical date." Invesco at 342. The impediments to redevelopment that the Donohoe Report notes - such as environmental contamination and asbestos removal - were in existence during the tax years at issue.

The most compelling of Milford's arguments against the Blau Appraisal is that the use of the sales comparison approach to valuation was questionable, but even if appropriate was not properly applied. In a previous opinion involving this property, the Tax Court found that because of the property's unique features it was not well suited to the sales comparison approach. Reigel Products

Corp. v. Milford Borough, 13 N.J. Tax 546 (1994).  This Court does not find that the findings in Reigel foreclose the use of the sales comparison approach to value this property.  The situation that pertained when Reigel was written was vastly different than during the pertinent tax years because that opinion was based on an operating paper mill being at the site.  The Mill was not operating for most of the tax years in dispute in this case so the use of a cost or income approach as applied in Reigel would be inappropriate.  The greater difficulty with the Blau Appraisal's use of the sales comparison approach is that no adjustments were made to any of the comparable properties to account for their considerable differences.  Mr. Blau testified, however, that he thought making adjustments would be futile because no adjustment was ever going to raise the comparable sales price per acre to a level necessary to cover the costs of asbestos abatement or demolition.  *See*, Transcript V at 105-06.

On the whole, the Court finds the Blau Appraisal to be reliable and the information contained in it to be consistent with information relied upon by other appraisers.  Nonetheless, the Court does not need to adopt the conclusion in the Blau Appraisal wholesale.  Rather, the Court is charged with arriving at a fair value based on the totality of the evidence presented, as well as the Court's own experience. Inmar Assocs., Inc. v. Borough of Carlstadt, 112 N.J. 593 (1988). Evaluating appraisals is a regular part of a bankruptcy judge's duties, and that experience has shown that appraising is far from an exact science.  Despite what the numbers reveal (in this case, zero value if environmental, asbestos, and demolition costs are taken into consideration) the Court must sometimes take a step back and look at the big picture.

The New Jersey Supreme Court has commented that determination of value is at its core a common sense determination. <u>Hackensack Water Co. v. Old Tappan Borough</u>, 77 N.J. 208 (1978). In this case, it simply does not comport with common sense to conclude that this property was devoid of value on the relevant dates when there have been offers to purchase the property for substantial amounts[5]. In addition, it would not comport with the Court's notions of fairness to assign a zero value to the property when the Debtor itself acknowledges some potential value. The Debtor's closing argument states that "[a]ll of the evidence regarding the value of the Real Property can be distilled down to this: The value of the real property *as zoned* was, at most, $3 million in tax years 2002, 2003 and 2004 and the value of the real property *as zoned* was at most $1.5 million in tax years 2005 and 2006." *Curtis Closing Argument* at 23.

After careful consideration of all the evidence presented, the Court finds that the proper assessed value of the property to be the figures noted in the Debtor's papers. The Court finds that those figures strike a proper balance between the evidence presented regarding the substantial costs that would be involved in readying this property for redevelopment, and the fact that a pool of potential buyers appears to exists that are willing to attempt to obtain a change in the current zoning. For example, the $3 million figure for tax years 2002-2004 is in accord with an appraisal obtained in 2002 by Foothill Capital Corporation, in contemplation of extending financing to Curtis, that

---

[5]For example, in April 2003 an investment group composed of Bruce Curley and certain other of the Debtor's managers executed a letter of intent for $3,000,000; in February 2004 there was an offer to purchase from American Properties Realty, Inc. for $1,500,000 plus the assumption of certain environmental liabilities; in March 2004 a contract for sale was signed with Milford Mill Property, LLC fro $1,500,000 plus the assumption of approximately $1,300,000 in environmental liabilities. An auction in the Spring of 2004 conducted by the Ohio Court in the assignment proceeding generated qualified bids of $1,680,000 and $1,700,000, both bids included the assumption of certain environmental liabilities. The auction resulted in a winning bid of $7,525,000 with back up bids of $7,500,000 and $6,500,000.

valued the property at no more than $3,500,000. [McKinnish Dec. at ¶¶ 22-24.] Overall, this court finds "a rough measure of justice in the assessment." Ford Motor Co. v. Township of Edison, 127 N.J. 290, 313 (1992).

## Conclusion

On Count I the Court finds that the total assessed value[6] for Lot 13, block 5.01 and Block 19, Lot 51 should be $3 million for tax years 2002-2004 and $1.5 million for tax years 2005-2006. Count II of the Complaint, involving Alexandria Township, will be dismissed. Debtor's counsel should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: July 17, 2008

---

[6] The Court does not think the evidence before it permits it to precisely allocate that value between the two parcels and will trust in the judgment of Milford Borough to arrive at a fair allocation.